IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEROY DENNIS MAYBERRY,

        Plaintiff,                     No. CIV S-08-1601 GGH

    vs.

MICHAEL J. ASTRUE,           ORDER
Commissioner of
Social Security,

        Defendant.
                               /

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons that follow, Plaintiff's Motion for Summary Judgment is granted in part, the Commissioner's Cross Motion for Summary Judgment is denied, and this matter is remanded to the ALJ for further findings as directed in this opinion. The Clerk is directed to enter judgment for plaintiff.

BACKGROUND

        Plaintiff, born October 7, 1959, applied on October 13, 2005 for disability benefits. (Tr. at 52-54.) Plaintiff alleged he was unable to work due to back problems. (Tr. at 57.)

1

1   In a decision dated September 27, 2007, ALJ Howard K. Treblin determined

2   plaintiff was not disabled. The ALJ made the following findings:[1]

3    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.    The claimant has not engaged in substantial gainful activity since January 21, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq*.).

3.    The claimant has the following severe impairment: lumbar disc disease (20 CFR 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|   |     |                                                                                                                                                                                                                                                      |
|---|-----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|   |     | undersigned finds that the claimant has the residual functional capacity to perform the full range of light work.                                                                                                                                    |
|   | 6.  | The claimant is unable to perform any past relevant work (20 CFR 404.1565).                                                                                                                                                                          |
|   | 7.  | The claimant was born on October 7, 1959 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).                                                                           |
|   | 8.  | The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).                                                                                                                                           |
|   | 9.  | Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). |
|   | 10. | Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).              |
|   | 11. | The claimant has not been under a disability, as defined in the Social Security Act, from January 21, 2005 through the date of this decision (20 CFR 404.1520(g)).                                                                                   |

(Tr. at 17-21.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ Failed to Accord Proper Weight to the Various Medical Opinions of Record; B. Whether the ALJ Erred in Determining That Plaintiff Was Not Wholly Credible; and C. Whether the ALJ's Residual Functional Capacity Assessment and Finding that Plaintiff Could Perform Work Existing in Significant Numbers in the National Economy are not Supported by Substantial Evidence and are Legally Erroneous.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

 A. Whether the ALJ Failed to Accord Proper Weight to the Various Medical Opinions of Record

  Plaintiff contends that the ALJ improperly rejected the opinions of the majority of medical practitioners, and improperly rejected one report of the doctor upon whom he primarily relied, Dr. Otani.

  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[2] Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

---

[2] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." Id. Medical opinions from "acceptable medical sources," have the same status when assessing weight. See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

4

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

Plaintiff first asserts that the ALJ erred in relying on an older report by Dr. Otani, dated September 22, 2005, rather than a more recent report by this treating physician, dated April 7, 2006, which showed a worsening in plaintiff's condition. The ALJ gave greater weight to the older report, finding that it was more consistent with the objective findings. He gave no weight to the later report, "because there is no objective evidence of deterioration in the claimant's lumbar spine condition to warrant a change in his ability to sit and walk in an 8-hour day." (Tr. at 19.)

Dr. Otani opined in his September, 2005 report that plaintiff could sit for one hour at a time for a total of six hours, lift 25 pounds occasionally, never bend or crawl, occasionally do ladder work, operate a forklift for a half hour at a time for a total of three hours in a work day, and walk for up to six hours in a work day. (Tr. at 89.) This doctor recommended an MRI due to pain radiating down plaintiff's right leg. This MRI, dated November 10, 2005, apparently impacted Dr. Otani's April, 2006 report. It noted scant disc bulging at L2 - L4, and mild disc bulge from L4-S1. There was mild to moderate loss of disc height at L2-3. (Id. at 87.) The impression was mild to moderate degenerative change scattered throughout with some loss of disc height and anterior osteophyte formation. There was no disc extrusion, canal stenosis or

root impingement.[3]  (Id. at 88.)

   The Otani report which the ALJ rejected was dated April 7, 2006, and found that plaintiff could walk for one hour at a time and four hours in an eight hour day, sit for one hour at a time, and no more than three hours in a day, lift up to 25 pounds, drive a forklift for half hour at a time, for a total of three hours in an eight hour day, and no bending, stooping or twisting of the back.  It did not include any basis for these limitations.  (Id. at 161.)

   It was reasonable for the ALJ to rely on Dr. Otani's earlier RFC as the later RFC did not appear to accurately reflect the mild results of the November, 2005 MRI.  Furthermore, between September 22, 2005 and April 7, 2006, there is only one report of treatment by Dr. Otani which would be relevant to plaintiff's claim that his condition worsened, and the report instead supports the ALJ's view that there was no objective evidence of deterioration to warrant the change in Dr. Otani's RFC assessment during this seven month period.  This lone report, dated December 1, 2005, states that plaintiff reported that "his condition remains the same."  (Id. at 216.)  Dr. Otani also states at this time, "patient has normal gait and station.  Spine shows decreased lumbar lordosis.  Deep tendon reflexes are 1+ at the upper and lower extremities.  Manual muscle testing is 5/5."  (Id. at 216.)  At this time, Dr. Otani stated that he had not seen plaintiff since September 22, 2005, and planned to see him again in four months; however, the next record indicating a visit with this doctor is the April 7, 2006 report which appears to have suddenly restricted plaintiff's functional abilities without explanation.  (Id. at 161.)  This check-off form[4] does not provide a basis for the restrictions, and there are no other records during the intervening time period which would explain the increased restrictions in functioning.  As such, the later Otani report was properly rejected.

---

[3] Plaintiff's previous MRI, dated May 7, 2004, showed a slight reduction in the L4-5 disc height and reduction of the L5-S1 disc height, but preserved over 50 %.  (Tr. at 101-02.)

[4] See Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).

In addition to the most recent MRI, the ALJ also pointed to other objective testing in the record. On December 17, 2005, consulting orthopedist Dr. Lewis opined that there was "limited range of motion of the lumbar spine, negative straight leg raising bilaterally, and no motor strength or sensory deficits." (Id. at 19, 148-49.) Reflexes were normal, as was the sensory exam, straight leg raising and Patrick's Test. (Id. at 149-50.) Range of motion of the lumbar spine was decreased, and function strength was limited. (Id. at 148-49.) Plaintiff was able to move about the examining room without problem, and did not need an assistive device. (Id. at 19, 144, 146, 151.) This specialist's diagnosis was "chronic low back pain, likely discogenic per history with symptoms of radiculitis without examination evidence of neurologic deficits." (Id. at 150.)

The remainder of Dr. Lewis' functional capacity assessment was that plaintiff could stand and walk for six noncontinuous hours with normal rest breaks, sit without limitation and with normal rest breaks, but recommended alternating sitting and standing as best for his functioning, bend only rarely, occasionally balance and climb, occasionally kneel and squat, and lift and carry up to 15 pounds frequently, and 25 pounds occasionally and above the waist only. Plaintiff did not require an assistive device. (Id. at 150-51.)

Although the ALJ rejected Dr. Lewis' opinion that plaintiff needed to alternate sitting and standing as inconsistent with the MRI and lack of radiculopathy, he did not reject the remainder of this opinion. (Id. at 19-20.) An ALJ may properly rely upon only selected portions of a medical opinion while rejecting other parts. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial evidence). However, such selective reliance must be consistent with the medical record as a whole. See, e.g., Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ cannot reject portion of medical report that is clearly reliable).

\\\\\

\\\\\

1         The ALJ also noted that the records were generally negative in regard to evidence

2 of radiculopathy.[5]

3         As for the ALJ's rejection of other evidence, the court finds that he gave specific

4 and legitimate reasons. He rejected the opinions of Dr. Fox and Dr. Clifford as inconsistent with

5 the objective studies and clinical findings. Specifically, he found that the MRI did not reveal

6 evidence of a herniated nucleus pulposus, stenosis or nerve root impingement. He added that the

7 physical exams showed no evidence of radiculopathy, gait disturbance or need for an assistive

8 device. (Id. at 19.)

9         Plaintiff asserts that the later MRI showed plaintiff's impairment was worse than

10 previously thought, as evidenced by Dr. Clifford's report. This doctor was an Agreed Medical

11 Examiner for plaintiff's worker's compensation case. He interpreted the November, 2005 MRI

12 as indicating significant changes, particularly at L2-3. He noted facet hypertrophy at all three

13 levels, annular disc bulging at L5-S1 with no neural foraminal narrowing, and no canal stenosis.

14 (Id. at 279.) He diagnosed multilevel degenerative disc disease, mostly at L2-3 with soft signs of

15 radiculopathy, right lower extremity. (Tr. at 280.) Dr. Clifford concluded that plaintiff had lost

16 approximately 75% of his pre-injury capacity for bending, stooping, lifting, pushing, pulling, and

17 climbing. (Id. at 281.) He found plaintiff to be a qualified injured worker. (Id. at 282.) Because

18 Dr. Clifford was not a treating physician, and because the standards for workers' compensations

19 cases are different than those applicable to Social Security disability cases, the ALJ could

20 properly reject this opinion interpreting the November, 2005 MRI.

21         Dr. Fox's report was similarly rejected. This chiropractor treated plaintiff from

22 December, 2005 to June, 2007. His latest report, dated June 21, 2007, assessed plaintiff's

23 functional capacity, and found that he could lift 25 pounds occasionally, stand and walk for up to

---

[5] Although Dr. Clifford noted soft signs of radiculopathy, the most recent MRI was negative for root impingement. (Id. at 280, 88.) See www.back.com (discussing use of MRI to determine nerve root compression as a cause of radiculopathy of which the most common symptom is sciatica, or pain radiating from the back into the lower extremities.)

8

three hours in a work day and without interruption for thirty minutes at a time, sit for three hours in a work day and for thirty minutes without interruption, occasionally crouch, kneel, balance and climb, but never bend or stoop. Pushing and pulling were also affected. The findings which supported this assessment were the MRI indicating disc bulging with disc narrowing and dessication. (Tr. at 175-76.)  The MRI, indicating only scant to mild disc bulge, would not appear to support such a restriction in activity. (Id. at 87.)  Furthermore, as an "other source," this chiropractor may be given less weight in any event. 20 C.F.R. §§ 404.1513 (a),(d); 416.913 (a), (d).[6]

        The fact that the ALJ may not have discussed every finding by Drs. Clifford and Fox is not error. Although the ALJ is not required to discuss every piece of evidence, the record does need to demonstrate that he considered all of the evidence, and in this case it does. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (finding ALJ's summary conclusion that appellant's impairments did not meet or equal any Listed Impairment was a bare conclusion beyond meaningful judicial review).

    B. Residual Functional Capacity

        Plaintiff contends that the ALJ erred in relying on the grids because he could not do the full range of light work based on a preclusion from bending as well as a requirement that he alternate between sitting and standing.

        The Guidelines in table form ("grids") are combinations of residual functional capacity, age, education, and work experience. At the fifth step of the sequential analysis, the grids determine if other work is available. See generally Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring).

\\\\\

---

[6] The court accepts plaintiff's argument that in certain cases chiropractors may be given greater weight; however, the MRI still does not support the degree of limitation assessed by Dr. Fox.

9

The grids may be used if a claimant has both exertional and nonexertional limitations, so long as the nonexertional limitations do not significantly impact the exertional capabilities.[7] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc). The ALJ, however, is not automatically required to deviate from the grids whenever plaintiff has alleged a nonexertional limitation. Desrosiers, 846 F.2d at 577 ("[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids."); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1996). The ALJ must weigh the evidence with respect to work experience, education, and psychological and physical impairments to determine whether a nonexertional limitation significantly limits plaintiff's ability to work in a certain category. Desrosiers 846 F.2d at 578 (Pregerson, J., concurring). "A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable." Desrosiers, 846 F.2d at 577-78. The ALJ is then required to use a vocational expert. Aukland v. Massanari, 257 F. 3d. 1033 (9th Cir. 2001).

In regard to the requirement to alternate sitting and standing, this court previously found that the ALJ properly rejected this portion of Dr. Lewis' opinion as the record indicated for the most part a lack of evidence of radiculopathy and the MRI which showed no nerve root impingement. Therefore, it need not be considered at this step of the analysis.

Plaintiff objects to the ALJ's reliance on Dr. Otani's September 22, 2005 opinion regarding plaintiff's functional capacity as inconsistent with the full range of light work, which

---

[7] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (1996); SSR 83-10, Glossary; Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989). Non-exertional activities include mental, sensory, postural, manipulative and environmental matters which do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (1996); SSR 83-10, Glossary; Cooper, 880 F.2d at 1156 n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993).

the ALJ found plaintiff could do. Because this report precluded plaintiff from bending, plaintiff argues that the light exertional occupational base is significantly impacted.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Most sedentary and light jobs require no crouching and only occasional (very little up to one third of the time) stooping. SSR 83-14. See also SSR 85-15, *7 (ability to occasionally stoop or crouch leaves the sedentary and light occupational base virtually intact); 96-9p, *7 (crouching and other postural limitations "would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work"). Furthermore, "crawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world of work. This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees)." SSR 85-15, *7. Because light work involves frequent carrying of up to ten pounds, it implicitly requires "occasional bending of the stooping type; i.e., for no more than one-third of the workday..." SSR 83-14, *4. See also SSR 83-10 (noting that majority of light work jobs can be done with occasional rather than frequent stooping). Because light work usually requires occasional stooping, any limitation on this ability must be considered very carefully for a determination of its impact on the remaining occupational base of light work. SSR 83-14 at *4. This ruling recommends the use of a vocational expert in these types of situations.

\\\\\

Plaintiff is correct that the ALJ erred in finding that plaintiff could do the full range of light work, relying on the September, 2005 assessment of Dr. Otani which clearly precluded plaintiff from bending. Even if the argument is made that the ALJ may have relied on that part of consultative examiner Dr. Lewis' opinion which he did not reject (the need to alternate sitting and standing), this physician precluded plaintiff from bending other than the "rare occurrence" which would also prevent plaintiff from doing light work. (Id. at 150.) Furthermore, all other medical opinions on this subject, including those rejected by the ALJ, were in agreement that plaintiff should not bend. Dr. Otani's April, 2006 record also precluded plaintiff from bending or stooping. (Id. at 161.) Dr. Clifford made finding that plaintiff had lost about 75% of his pre-injury capacity for bending and stooping. (Id. at 281.) Dr. Fox stated that plaintiff should never bend or stoop. (Tr. at 176.)

The ALJ did not state whether he gave the DDS evaluation (which permitted occasional stooping) any weight; (see tr. at 154); however, if he was relying on this report, he was not permitted to do so without additional reliance on an examining physician's report, and there are no reports by examining physicians which permit occasional bending. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995) (citations omitted). See also Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007) (holding that opinion of non-treating physician, when based on same evidence relied on by treating physician, but supporting a different conclusion from the treating source, would not be considered substantial evidence).[8]

---

[8] It is unnecessary to belabor the issue with plaintiff's further contention that the ALJ erred in failing to consider the evaluation by a physical therapist at Enloe Rehabilitation Center which found plaintiff could stoop for no more than two minutes per hour. This evaluation dates back to 2000 and is much older than the other reports discussed above. Additionally, the opinion of the physical therapist does not constitute substantial evidence and was not relied upon by the ALJ. See 20 CFR § 416.913(a), (d)(1) (2008) (physical therapist not acceptable medical source, and therefore are accorded less weight as "other source"). Nevertheless, this opinion is

12

Because the preclusion of bending has a significant impact on light occupational base, application of the Medical-Vocational Guidelines ("grids") was therefore inappropriate, Tackett v. Apfel, 180 F.3d 1094 (9th Cir. 1999),[9] and the testimony of a vocational expert is required on remand, Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989) (absent reliable evidence of a claimant's ability to perform specific jobs, the Commissioner must rely on the testimony of a vocational expert to meet his burden at step five of the sequential analysis).[10]

---

consistent with the more recent reports by medical sources which precluded stooping and bending.

The Mountain Health Pain Management records which plaintiff claims the ALJ should have considered in regard to residual functional capacity do not address this issue, but only address the issuance of pain medication. (Tr. at 218-67.)

[9] In Tackett v. Apfel, supra, 180 F.3d at 1101-1102, the Ninth Circuit Court of Appeals explained (internal quotations omitted):

> The Commissioner's need for efficiency justifies use of the grids at step five where they completely and accurately represent a claimant's limitations.  See id. [Heckler v. Campbell, 461 U.S. 458, 460-462, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)] at 461.  In other words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work.  As explained in Desrosiers: "This court has recognized that significant non-exertional impairments, such as poor vision or inability to tolerate dust or gases, may make reliance on the grids inappropriate.  We have also held that pain can be a non-exertional limitation.  However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids.  The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations. . . . A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines.  In such a case, the guidelines would be inapplicable." 846 F.2d [573 (9th Cir. 1988)]at 577 (Pregerson, J., concurring) (internal citations omitted).  The ALJ may rely on the grids alone to show the availability of jobs for the claimant "only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir.1985); see also, 20 C.F.R. pt. 404, subpt.  P, app. 2, rule 200(e); Desrosiers, 846 F.2d at 577.  Examples of non-exertional limitations are pain, postural limitations, or environmental limitations. See id.

[10] Plaintiff also challenges the ALJ's credibility finding.  Because the matter is being remanded for further proceedings, the court will not reach this argument.  However, on remand, if plaintiff's testimony regarding his subjective complaints is discredited, the ALJ must, in the absence of affirmative evidence showing that plaintiff malingering, set forth clear and convincing reasons for rejecting plaintiff's testimony." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted in part; defendant's motion for summary judgment is denied. This case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for reassessment of plaintiff's residual functional capacity, and a determination, based upon the testimony of a vocational expert, whether plaintiff can perform any jobs that exist in significant numbers in the national economy. The Clerk is directed to enter Judgment for plaintiff.

DATED: 07/23/09

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076/Mayberry1601.ss.wpd